# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                                   Plaintiff,<br>vs.<br><br>JAMES TORRES,<br><br>                                 Defendant. | CASE NO. 14CR0890-LAB<br><br>**ORDER GRANTING MOTION FOR RECONSIDERATION; VACATING SENTENCE IMPOSED OCTOBER 6, 2014; RECUSING AND DIRECTING CLERK TO RANDOMLY REASSIGN CASE TO NEW JUDGE** |

        For reasons that defy a comprehensible explanation, the government inserted a provision into the plea agreement and into its Sentencing Summary Chart in this case, by which it committed to ask the Court to impose a reduced sentence if the defendant would waive his "right" to later file a petition to reduce his sentence pursuant to 18 U.S.C. § 3582(c). But the provision was a nonstarter: the defendant never had that "right" to begin with since he pled guilty to transporting more than 4.5 kilograms of methamphetamine across the international border. Although the November 1, 2014 amendments to the Sentencing Guidelines lowered the base offense levels for some drug offenses, the amendments did not change the levels for those who traffic in large amounts of methamphetamine – amounts that exceed 4.5 kilograms.[1] Ignoring the legally inoperative

---

[1] And this wasn't the defendant's first time trafficking. He admitted that he had successfully crossed drugs on three previous occasions before he was caught with this load.

§ 3582(c) variance provision in the plea agreement, the defendant's default guideline range as calculated by the parties was 108 to 135 months in custody.

When the defendant appeared for sentencing before this Court on October 6, 2014, represented by attorney Joseph McMullen, the following colloquy occurred:

| | |
|---|---|
| THE COURT: | Do we have a drug report in this case? |
| Mr. McMullen: | Yes, your honor. |
| THE COURT: | And what does it show? |
| Mr. McMullen: | Your honor, what it shows is that it was 96.7% pure, so we're talking about 4.679 kilos with a rounding error of .177, which means that we're two thousandths of a gram from the low end of that rounding error being just above the threshold where it would basically be at 4.5 kilos. So it's significantly less than other defendants, although – |
| THE COURT: | But he's not eligible [for § 3582(c) relief], right? |
| Mr. McMullen: | He's not eligible. |
| THE COURT: | Yea, so she's [the prosecutor who submitted the Sentencing Summary Chart] asking me to depart on that basis in the sentencing summary chart, right, Mr. Tenorio [the prosecutor who was handling the calendar before this court on October 6, 2014], and it doesn't seem I can. The defense concedes he's not eligible even if that change in the guidelines occurs. |

After expressing some initial confusion about the issue, Mr. Tenorio eventually understood what he was being asked and responded:

| | |
|---|---|
| Mr. Tenorio: | I think that's right. It could be that she [the AUSA who submitted the sentencing summary chart] was – the sentencing summary chart was submitted before the – |
| THE COURT: | Yeah, I'm not faulting her, it's just that it appears to be acknowledging that he can't. |

After hearing further from Mr. McMullen, and from the defendant, the Court asked:

| | |
|---|---|
| THE COURT: | Well, he's at 108 [months, the low end of the applicable guidelines range] before any variance, right? You acknowledge that? |
| Mr. McMullen: | Yes, your honor. |

///

///

| | | |
|---|---|---|
| 1 | The Court then asked if the government had anything to add. Mr. Tenorio responded: | |
| 2 | Mr. Tenorio: | Your honor, nothing much further. We just make the recommendation for the safety valve minus two and the minus four for fast track. |
| 3 | | |
| 4 | THE COURT: | So, you know, now that we have a [drug analysis] report and a concession by the defense that the defendant's not eligible for relief even if the guidelines change, I assume the government's recommendation is 108 months? |
| 5 | | |
| 6 | Mr. Tenorio: | Yes, 108. |

The Court then adopted the Sentencing Guidelines range that had been negotiated by the parties except for the 2-level variance based on the defendant's waiver of § 3582(c), which defense counsel had conceded several times the defendant was not eligible to invoke. The Court nonetheless found other grounds supported a variance from the low end of the Guidelines range, and ultimately imposed an 88 month sentence – one month higher than the 87 month sentence recommended in the government's sentencing summary chart.

At the conclusion of the sentencing, defense counsel objected to the sentence on the ground that the government had breached the plea agreement, and he asked that the defendant's case be transferred to another judge for resentencing. After listening to counsel's argument, the Court overruled the objection and denied the motion to transfer the case to another judge for resentencing. The Court stated:

THE COURT: The Court doesn't find a breach here, I just don't. I mean we can be hyper technical in the approach to this, but as you'll – you can correct me if I'm wrong, Mr. McMullen – but I first checked with you, and I said do you acknowledge that [the defendant] doesn't have an entitlement to file a 3582 petition – so before I ever said a word to the government and elicited their position on this. It was obviously something you had given some thought to because you had it down to the decimal how far off [the defendant] was from the qualification; you say, yeah, I acknowledge, he's not entitled to that, not entitled to it. It was only then that I turned to the government and asked them if they were in agreement also with that [position], at which point they said "yeah, we're in agreement, and that was Mr. Tenorio, sort of caught guard because he wasn't the one that made the deal, it was [a different prosecutor].

And so under these circumstances, I don't find that there was any type of breach or affirmative misrepresentation. The United States, even under the breach cases, is required to answer

> questions put to the Assistant [U.S. Attorney] truthfully, even if it's contrary to their position. Now, this is a twist because in the face of a concession by the defense lawyer before the United States ever speaks up that a later-filed petition would not be authorized because of the amount of drugs, to have them say yeah, I mean if that's the case, we, you know, agree with that read on the law, I don't know how that can be twisted into a breach.

The Court's statement concerning the prosecutor's duty to truthfully answer a direct judicial inquiry finds support in *United States v. Allen*, 434 F.3d 1166 (9th Cir. 2016). In *Allen*, the government and the defendant submitted a plea recommendation under the Guidelines that ignored a two-level enhancement to the defendant's offense level that the United States Probation Department had advocated. Attempting to resolve the discrepancy, the court asked the prosecutor to state the underlying facts, and eventually held an evidentiary hearing to determine whether the facts were true and reliable. *Id.* at 1169. After considering the AUSA's statements and the evidence, the court concluded that the enhancement applied and imposed a higher sentence than the one recommended by the parties. *Id.* at 1170.

On appeal, the Ninth Circuit rejected the defendant's argument that the government had breached the plea agreement by responding to the court's direct questions and by participating in the evidentiary hearing to resolve the Guidelines dispute. The Court stated:

> [A] plea agreement does not bar the government from honestly answering the district court's questions. To the contrary, honest response of the government to direct judicial inquiry is a prosecutor's professional obligation that cannot be barred, eroded or impaired by a plea agreement. *Id.* at 1166 (quoting *United States v. Maldonado*, 215 F.3d 1046, 1052 (9th Cir. 200)) (internal quotes omitted).

The *Allen* court went on to say: "The plea agreement contained no provision forbidding the prosecutor to respond to requests by the district court or to present evidence when specifically requested to do so." Likewise in this case, the plea agreement contained no restrictions on the prosecutor's duty to truthfully respond to judicial inquiries.

On October 28, 2014, defense counsel filed a motion for reconsideration of the Court's ruling overruling his breach objection and denying his request to transfer this case to another judge for resentencing. In support of his renewed position, counsel cited a

relatively recent Ninth Circuit case, *United States v. Heredia*, 768 F.3d 1220 (9th Cir. 2014), in which the court found that a prosecutor had breached a plea agreement. But the facts in Heredia are as different from what happened in this case as a dog is different from a frog.

In *Heredia*, the government entered into a binding plea agreement with the defendant under Rule 11(c)(1)(C)[2] with terms that were very favorable to the defendant. Besides granting various downward adjustments and departures, the government agreed to ask for a stipulated sentence at the low end of the defendant's applicable guideline range. 768 F.3d at 1228. The government also promised not to "seek, argue, or suggest in any way, *orally or in writing*, that any other specific offense characteristics, adjustments, departures, or variances in sentence . . . be imposed, or that the Court impose a sentence other than what has been stipulated to by the parties herein." *Id*. (emphasis added). Finally, the parties agreed that the probation report would only address the defendant's criminal history, "and that no further factual development of the record was required." *Id*.

Despite making a detailed and specific promise of leniency, and agreeing not to suggest in any way that the court should impose a sentence different from the one that had been agreed to, the prosecutor filed an "inflammatory" sentencing memorandum detailing the worst aspects of the defendant's background and criminal record. 768 F.3d at 1233. In his memorandum, the prosecutor resorted to heated rhetoric, arguing that defendant's criminal history "communicate[d] a consistent disregard for both the criminal and immigration laws of the United States." *Id*. at 1229. He also wrote that the defendant had a "demonstrated propensity for drug-trafficking and theft-related offenses," that "an appropriate sentence" was needed to deter the defendant from future criminal conduct, and that the defendant "pose[d] a danger to the community" because of his criminal history. *Id*.  So polemic was the tone of the prosecutor's memorandum that the Ninth Circuit observed "[t]he reader is left to wonder why the government believed a low-end sentence was appropriate

---

[2] A district court's sentencing discretion is significantly limited under Rule 11(c)(1)(C): It may either accept the plea agreement, in which case it **must** impose the sentence recommended by the parties, or it may reject the plea agreement and permit the defendant to withdraw his guilty plea. *Ellis v. U.S. Dist. Ct.*, 356 F.3d 1198, 1207–08 (9th Cir. 2004) (en banc).

in the first place." *Id*. at 1234. The *Heredia* court concluded that the prosecutor's pejorative comments served "no purpose" but to argue for a harsher punishment than he had agreed to recommend, and that by implicitly advocating for a harsher sentence the government breached the plea agreement. *Id*.

On November 21, 2014, the government filed a response to Mr. McMullen's motion for reconsideration. Incredibly, in spite of the readily perceivable, game-changing distinctions between what occurred in *Heredia* and what happened here – and without ever acknowledging or even mentioning *United States v. Allen* – the government found *Heredia* "instructive." So instructive, in fact, that without any meaningful attempt to analyze the stark and obvious differences between *Heredia* and this case, the government facilely conceded that Mr. Tenorio's truthful response to the Court's direct question about the applicable guideline range constituted a breach of the plea agreement.

One would have expected more of a fight from the government under these very different circumstances. *Allen*, after all, obligates prosecutors to truthfully respond to direct judicial inquiries, even when their truthful answers may be inconsistent with their sentencing recommendation. Considered in their fair context, Mr. Tenorio's brief comments went no further than to honestly respond to specific questions that the Court put to him. If that is a breach, as the government apparently believes, then prosecutors in future sentencing hearings before this Court would be well advised to say nothing.

But there is much more that distinguishes this case from *Heredia* and, in turn, makes the government's concession of breach even more questionable. To begin with, the plea agreement in this case did not unconditionally commit the government to recommend 87 months instead of 108 months. Rather, the government's promise to recommend an 87-month sentence hinged on the defendant's waiving his "right" to later seek a sentencing reduction under § 3582(c).  However, that portion of the plea agreement (denominated specially by asterisks in the Sentencing Summary Chart) never became operative because, before Mr. Tenorio had the chance to say a word, defense counsel had already disclaimed
///

it by forthrightly admitting that "[the defendant is] not eligible." In other words, there were no "rights" for him to waive.

The Ninth Circuit interprets plea agreements using ordinary contract standards. *United States v. Ellis*, 641 F.3d at 411, 417 (9th Cir. 2011). Applying those standards here, a condition precedent to the government's obligation to recommend an 87 month sentence was that the defendant had waived the right to seek a later reduction of his sentence under § 3582(c) in open court; otherwise, the government could and would recommend 108 months. A condition precedent in a contract must be performed or happen before a duty of immediate performance arises on the promise. If the "[condition precedent] is breached or does not occur, the promisee [here the defendant] acquires no right to the promise." *United States v. Shaeffer*, 391 F.2d 907, 911 (9th Cir. 1963) (citing Restatement of Law, Contracts). *See also Oh v. Resolution Trust Corp.*, 26 F.3d 131 (9th Cir. 1994) (plaintiff was not entitled to specific performance under a real estate agreement because she neither performed the conditions precedent nor could assure future performance of the conditions); *In re Bailey*, 626 Fed. Appx. 644, 646 (9th Cir. 2013) (affirming the bankruptcy court's finding that the debtor is not entitled to benefits under the settlement agreement because the debtor failed to perform conditions precedent). Here, defense conceded that the defendant could not perform his obligation to waive the contemplated rights because he was not eligible for § 3582(c) relief and therefore possessed no "rights" under that statute. The effect of that concession was to default on the condition precedent to the government's obligation to recommend an 87 month sentence, because that obligation arose only if the defendant fulfilled his promise. How then can the government maintain that it was a breach for Mr. Tenorio to truthfully and accurately acknowledge the correct default sentencing range, and recommend a low end sentence of 108 months, as agreed to by the parties, if the defendant wouldn't or couldn't perform his obligations under the plea agreement?

The Ninth Circuit has held that once a prosecutor agrees to recommend a certain sentence, he may not alter or vary the recommendation simply because the court voices disagreement with it. *United States v. Camarillo-Tello*, 236 F.3d 1024, 1027-28 (9th Cir.

2001). But that's not what happened here.  The sentencing transcript unambiguously establishes that the Court sought initially sought to clarify its legal authority rather than to voice disagreement with the government's recommendation.  That's why the Court first asked Mr. McMullen if the defendant was eligible for a post-sentencing reduction of his sentence. Only after Mr. McMullen conceded that the defendant was not eligible did the Court then elicit Mr. Tenorio's agreement with that legal concession. The Ninth Circuit has stressed that the prosecutor's obligation is to present a "united front" with the defense, communicating to the court that both sides believe a recommendation is appropriate and reasonable under the circumstances. Contrary to the intimidated reasoning that characterizes the government's response, Mr. Tenorio did that in this case.

All of this suggests, of course, that the defendant's motion for reconsideration should be denied. A court has the obligation to hear cases that are randomly assigned to it unless there are legally adequate grounds for the court to recuse. *See Ignacio v. Judges of U.S. Court of Appeals for Ninth Circuit*, 453 F.3d 1160, 1165 (9th Cir. 2005) (a judge has "as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require").  This is because recusal exacts a cost to the justice system – particularly after a court has invested the time to adjudicate a case and sentence the defendant as the Court has done here. Recusal in this case means that another judge must now read all of the sentencing materials, conduct a new sentencing hearing, and otherwise expend scarce judicial resources in a do-over.  Recusal for no good reason also encourages judge shopping (a motive that the Court strongly suspects is in play here).  If a defendant can demand a new judge simply by raising a bogus claim of breach, then the process of ensuring fairness by the random assignment of cases has little chance of succeeding.

But the government's hasty and ill advised concession in this case puts it and the Court in an untenable position. If the defendant chooses to appeal, even though the Court believes that right was waived by the pronouncement of an 88 month sentence, how can the government walk back its concession of breach on appeal? *Cf. United States v. Maloney*, 755 F.3d 1044, 2014 U.S. App. LEXIS 3864, *4 (9th Cir. 2014) (en banc) (granting

government's motion for summary reversal and remand). Even were the government to reconsider its legal position in light of this order, it has likely forfeited any opportunity to change it.  Moreover, given what has occurred to this point, the judges of the Ninth Circuit would likely throw up their collective hands and ask if the government has no interest in protecting its prosecutors against flimsy allegations of breach, why should they?

The defendant's motion for reconsideration is **GRANTED**. The sentence imposed by this court on October 6, 2014 is **VACATED**.  This undersigned Judge **RECUSES** from further involvement in this case, and directs the Clerk of the Court to randomly reassign the case to a different judge.

**IT IS SO ORDERED.**

DATED:  December 4, 2014

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge